# IN THE COURT OF APPEALS OF IOWA

No. 18-1173
Filed February 6, 2019

IN THE INTEREST OF S.C.-H.,
Minor Child,

J.T., Mother,
         Appellant.
_____

Appeal from the Iowa District Court for Hamilton County, Paul B. Ahlers,
District Associate Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Justin T. Deppe of Deppe Law Office, Jewell, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney
General, for appellee State.

Douglas Cook, Jewell, guardian ad litem for minor child.


Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals the juvenile court's termination of her parental rights. She contends the State failed to make reasonable efforts to reunify her with the child and prove the statutory grounds for termination by clear and convincing evidence. Further, she contends termination is not in the best interests of the child and requests additional time to work toward reunification.

**I.     Background Facts and Proceedings**

J.T. is the mother and J.H. is the father of S.C.-H., born in June 2015.[1] The child first came to the attention of the Iowa Department of Human Services (DHS) one month after birth. During its investigation, DHS found the mother's home unsafe and unsanitary. DHS observed garbage and clutter littered throughout the entire home to the point that doors could not be opened, which created potential fire hazards, and rooms were rendered unusable. Further, the mother suffered from mental-health issues, which were either the cause of or exacerbated her hoarding behaviors. The mother's involvement with the juvenile court system dates back to at least 2010 with her older children. The safety of the home was a concern during those earlier proceedings.

S.C.-H. was adjudicated in need of assistance (CINA) in October 2015 and remained under the care of the mother with protective supervision by DHS. At a dispositional review hearing in April 2016, the court continued the child's CINA adjudication and placement with the mother under DHS protective supervision.

---

[1] Though the father filed a notice of appeal, his petition on appeal was untimely and consequently dismissed by our supreme court. Therefore, he is not part of this appeal.

The court noted improvement to the mother's home. However, she had been unable to consistently maintain a safe environment for the child.

In July, after the mother delivered the child to the father for a visitation, the father noticed bruising on the child's face and ribs and the child had difficulty breathing; the father had the child transported to the hospital. DHS also noted multiple red marks, scratches, and bruising on the child. Medical personnel diagnosed the child with four to five fractured ribs in addition to noting multiple rib fractures in various stages of healing, which did not occur on one single occasion. The father also reported he noticed the child had difficulty breathing when the mother dropped off the child for another visitation two weeks earlier. The child's stepmother noted healing bruises on the child's rib area during that visitation. The child was subsequently diagnosed with pneumonia.

Ultimately, neither DHS nor the court were able to determine in whose care the child was when the injuries occurred or who specifically caused the injuries, due in part because of a time delay between when the mother dropped off the child to the father and when the child was transported to the hospital. DHS returned founded child-abuse assessments against both parents for denial of critical care and physical abuse. The parents consented to a voluntary removal and placement of the child in foster care. The court subsequently modified the CINA dispositional order to reflect the out-of-home placement. In February 2017, the State petitioned to terminate the mother's parental rights. The court denied the State's petition and continued the child's placement for an additional six months to allow for reunification.

After removal, the mother's visitation began with fully-supervised visits and progressed to semi-supervised visits. However, the visitation returned to fully supervised after DHS noted safety concerns with the mother's parenting skills. The mother returned the child to daycare and the foster parents with dirty and soaked diapers on multiple occasions. The child also exhibited signs that the diapers were not changed for an extended period of time. The child's foster parents and daycare provider noted the child acted confused and different after visits with the mother, especially those less supervised by DHS. DHS also noted multiple occurrences when the child wandered away from the mother near traffic on the street or in a parking lot due to the mother's lack of attention. Service providers were also required to bring to the mother's attention potentially dangerous situations, such as the child standing or climbing up on chairs, rather than the mother recognizing the danger herself. Further, the mother returned the child to the foster family or daycare provider with hair or string tied around the child's penis on multiple occasions. She claimed no knowledge or explanation as to how the string or hair came to be tied onto her child.

The mother appeared to make progress in cleaning and clearing her home. However, DHS discovered she had only moved items to her basement where the items subsequently became moldy. Significant levels of lead were also found in the mother's home. The mother struggled to take steps to remediate any of these issues, despite her home being a concern throughout the pendency of this case as well as a significant issue in the DHS cases involving her older children, which date back to 2010. DHS discontinued all visitations at the mother's house due to

the unclean and unsafe conditions. The mother finally moved into a new apartment in April 2018.

The mother's relationships also concerned DHS, as she failed to inform DHS of the people she allowed access to the child. The mother admitted she took the child to another state to meet a man who had access to the child at approximately the same time the child suffered broken ribs doctors found in various stages of healing in July 2016. The mother's other children also complained that the mother failed to maintain appropriate boundaries as she engaged in sexual acts without concern as to her children's location, and her son alleged the mother inappropriately touched him.

The State petitioned to terminate the mother's parental rights in September 2017 pursuant to Iowa Code section 232.116(1)(a), (e), and (f) (2017). In its petition, though the State referred to subsection (f),[2] the factual allegations it alleged were not those required by subsection (f), but were a combination of elements from subsections (f) and (h).[3] The court held a hearing in October, however the court was unable to complete the hearing that day. It reconvened the hearing in June 2018. Following the hearing, the juvenile court terminated the

---

[2] The State's petition alleged the parents' rights should be terminated pursuant to subsection (f) because:

> the child is three years of age or younger, the child has been adjudicated a [CINA] pursuant to section 232.96, the child has removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days and there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[3] Subsection (f) requires the child to be "four years of age or older." Iowa Code § 232.116(1)(f)(1). Subsection (h) requires the child to be "three years of age or younger." *Id.* § 232.116(1)(h)(1).

mother's parental rights to S.C.-H. pursuant to Iowa Code section 232.116(1)(f) "and/or" (h), as the court recognized the typographical error in the State's petition regarding the enumerated subsections. The court found that no party suffered prejudice from the error in the petition because subsection (f) is not applicable because of the child's age. Further, the court found that, though subsection (h) imposes a shorter time period, the State met the longer time period required under subsection (f),[4] given the child had been removed from the mother's care for nearly twenty-three months. The mother appeals.

## II. Analysis

Review of termination-of-parental-rights proceedings is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* We will uphold the termination of parental rights "if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *Id.* The best interests of the child is the principal interest in termination proceedings. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

### A. Reasonable Efforts

The mother appeals the court's determination that DHS provided reasonable efforts toward reunification. However she fails to provide any arguments, citations to authorities, or facts to support her claim. Further, she failed

---

[4] Subsection (f) requires the court to find "[t]he child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days." *Id.* § 232.116(1)(f)(3). Subsection (h) requires "[t]he child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." *Id.* § 232.116(1)(h)(3).

to challenge reasonable efforts prior to or during the termination hearing. We therefore deem the argument waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."); *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) ("[I]t is the parent's responsibility 'to demand other, different, or additional services prior to the termination hearing.'" (quoting *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999))).

B.      Sufficiency of the Evidence

The mother claims there is insufficient evidence in the record to support the termination of her parental rights. "Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "The first step is to determine whether any ground for termination under section 232.116(1) has been established." *Id.* "If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. "Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220.

Here, the juvenile court terminated the mother's parental rights pursuant to section 232.116(f) "and/or" (h). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order

on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). First, we find, and the State concedes, section 232.116(1)(f) is not applicable to this case given that the child in question was born in June 2015, so is not "four years of age or older," the first element of subsection (f).

Termination under section 232.116(1)(h) can be ordered when there is clear and convincing evidence the child: (1) is three years of age or younger; (2) has been adjudicated a CINA; (3) has been removed from the physical custody of the parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody at the present time. "At the present time" has been interpreted to mean "at the time of the termination hearing." *See D.W.*, 791 N.W.2d at 707.

The mother does not challenge the establishment of the first three elements. She instead challenges the fourth element and claims that there is insufficient evidence that the child could not be returned to her at the time of the termination hearing. She contends the State failed to show she ever harmed her child and DHS used its concerns to prevent her from progressing beyond supervised and semi-supervised visitation.

On our de novo review, we find there is clear and convincing evidence that the child could not be returned to the mother at the time of the termination hearing. The mother has a history of hoarding behaviors, which led her house to be unsafe and unsanitary. Her house also tested positive for high amounts of lead. Despite numerous notices and offers of assistance, the mother failed to remediate these concerns for most of the pendency of this case. The unsafe condition of her house

had been ongoing since 2010, when DHS intervened with her older children. Only in April 2018 did the mother finally move into a new and safe apartment. "A parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. Additionally, the child had been removed from the mother's care for almost two years at the time of the termination hearing and the mother had not progressed beyond semi-supervised visits. Though the mother blames DHS for this lack of progression, she seems to fail to recognize that on multiple occasions during visitations when she was not closely supervised, she failed to adequately care for the child, returning the child in soiled clothes. Further, the child exhibited signs of spending an extended amount of time in the soiled clothing. The mother also failed to recognize a string or hair wrapped around the child's penis on more than one occasion and failed to recognize potentially dangerous situations the child was exposed to. In total, we conclude the child could not be returned to the mother's care at the time of the termination hearing.

C.    Best Interests

The mother also argues that termination is not the child's best interests. When determining whether termination is in a child's best interests, "there is no all-encompassing best-interest standard." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *A.B.*, 815 N.W.2d at 778 (quoting *C.B.*, 611 N.W.2d at 495). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional

condition and needs of the child." Iowa Code § 232.116(2). DHS has extended services to the mother for nearly two years, yet the child has not been returned to her care. On our de novo review and as noted above, the mother has not demonstrated an ability to adequately parent the child, as the evidence shows that placing the child with the mother puts the child at risk whether or not DHS provides full supervision. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)). We find termination is in the child's best interest. The mother does not argue that a statutory exception to termination applies. Accordingly, we need not address the step. *See P.L.*, 778 N.W.2d at 40.

  D.  Extension

  Finally, the mother argues that additional time should be granted to allow for reunification. Section 232.104(2)(b) permits the juvenile court to continue the placement of a child for an additional six months to allow for reunification if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." On our de novo review, we find the record reflects the mother has been granted ample time and opportunity to show the court that she could adequately and safely care for the child and has not been able to do so. The mother failed to provide a safe and sanitary home until only a few months before the termination hearing, despite being an issue since 2010. Further, the court already granted the mother a six-month extension. We conclude an extension of time is not warranted in this case.

We therefore affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**